Council in Valley Electronics AG et al. versus Chelsea Polis 21-2108 Mr. Ross. Yes, thank you, and good afternoon, Your Honors. Pete Ross, and may it please the Court, Pete Ross, representing appellants, and let me just pick up where we left off with the last argument. This is another defamation case, dismissed on a motion to dismiss, review is de novo, and the question is, as framed by the Flam case, and I quote, whether the facts about the defamation plaintiff. That's not whether the statement could also be construed as one of opinion. All inferences at this point have to be made in our favor. So I want to talk about several of the statements and issue, but before I do, just a word about the context. Dr. Polis was successful in getting one man, the editor of one scientific journal, to depublish one of our studies, the 2018 study as we refer to it. We have four other studies that have not been depublished, including the Freudle study. So with that in mind, some of the statements and issue. Could I just ask a brief clarification question? So looking at the retracted article, you said that this was the decision of just one man. Usually in my experience, scientific journals will have an editorial board and a retraction is a serious undertaking. Does the record show here, or do we have a basis for concluding that it was a decision from one individual solely? I would suppose that other people may have been involved, but from the record before the court, it was as stated by Dr. Polis on her website and in blogs, she convinced the editor to retract the article. So at this point, all we have before the court is one man. So looking at the Polis website or starting there, that said A22 through 25 of the appendix, quote, Daisy misrepresented their evidence base to their customers, close quote. Dr. Polis explains why she believes that Daisy misrepresented its evidence. I'm sorry, what was that page again? It's on A22 through A25. She says that the Freudal study, one of our other studies, is also not reliable. But we disagree. We've alleged that her statement is false. We've alleged that the Freudal study is not a flawed study. And those statements must be accepted at this stage of the proceedings. Daisy's position, in other words, has not been proven wrong as a matter of law. We should get by a motion to dismiss. Second statement from the website, quote, Daisy pointed worried customers to a prior study they know is flawed, close quote. Again, Dr. Polis explains that she's the Freudal study, but we allege that it is not flawed. And her statement made to the public is false. But on a motion to dismiss, I'm not sure we have to accept as true your assertion that simply that it's not flawed. I mean, here, looking at the page A23, what she is doing is highlighting her views, and I would say her opinions about the relative merits of various bullet points, pointing readers to the basis for her conclusions. And that is a kind of standard approach in expression of protected opinion, where an opinion is given and the basis for it provided, so the reader isn't left to just speculate. She does more than just saying, this is, you know, the study is erroneous. So I'm not sure that we have to accept your view of the merits or demerits of a particular scientific study based on your say-so at this stage in the proceedings. Am I wrong in that? Well, there are two different scenarios one could be talking about in this situation. One is where a statement of opinion is given, and then the facts are expressed on which the opinion is based. And in that situation, if the facts are fully expressed, it really is a statement of opinion. But here we don't have, we don't start with a statement of opinion. It says, Daisy pointed worried customers to a prior study they know is flawed. We're saying not only is it not flawed, but we don't know it to be flawed. And so the first part, whether or not it's flawed, is certainly factual and capable of being proven or disproven. Let me suggest to you why that might not be the case, because flawed is the kind of imprecise word that is not capable of being proven true or false. It suggests that the speaker thinks it's not up to whatever standards she is applying. Why shouldn't I view it that way? Then your second statement that they knew is flawed might be the basis of a different argument. I recognize that. But if you're going to press that a statement that something is flawed is capable of being proved true or false, is there any decision that is ever so held? I haven't found a decision on the word flawed, but I think that is something that is capable of being proven true or false. And we're viewing things in the context most favorable to my client at this point. And the second part of the statement implies that we're acting deceptively and dishonestly. And that is the separate defamation against us. And that certainly could be proven true or false. To move on. My concern with what can be proved true or false is another statement that she made that you Right. And it seems that in New York law anyway, sometimes that kind of charge is subject to a defamation action, especially when it involves individuals subject to particular canons of ethics. But there are also a host of cases that find it to be the kind of statement that's made It seems that flawed fits into that same category for imprecise words. Yes. But ethical, of course, does have a meaning. We know what an unethical lawyer is. But that's the point. New York has sometimes recognized it. When the entity is subject to particular ethical standard, you don't allege that that pertains to your client. As I said, there are a number of cases that have not viewed unethical as a defamatory statement. When it's stated more generally, it's viewed as a hyperbolic opinion. True. But I think in this case, in the context Is your client subject to some kind of ethical rules or regulations? I mean, you don't plead it. We don't. Okay. We don't plead it. But I think in context that Dr. Polis is referring to deceptive statements. Well, that's not good enough. I mean, what ethical rule do you think she's accusing you of violating? Truth in advertising. Okay, go ahead. Okay. Last example I'll tackle is from her social media. Quote, I wish the best of luck to the lawyers who are trying to assist people who may have been harmed by deceptive advertising. Close quote. Statement implies that there's been deceptive advertising. It does not disclose the facts upon which the statement is based. We allege the statement is false. We have not engaged in deceptive advertising. Once again, we should be through or passed a motion to dismiss. Thank you. Thank you, Mr. Ross. Thank you. Mr. Callahan. Thank you, Your Honors. Sam Callahan for the appellee, Dr. Chelsea Polis. Your Honors, I want to pick up just where we left off. So what was missing for that first 10 minutes of the argument was any discussion of the broader context in which these statements appear. And New York courts have repeatedly held that those contextual clues that are presented to readers are not just important, but in fact, the most important factor. And just to illustrate this point, I want to provide a few examples of the statements that were held not actionable in the Immuno case, which we rely on a biologics company for a plan to start a research facility in Africa. And the letter to the editor said that releasing chimpanzees after the company's research, quote, would be hazardous to wild populations. Quote, there is no way to determine that an animal is definitely not a carrier of the disease. To me, that sounds like a statement that can be proven readily true or false. But what the court said is under New York law, which is broader than the federal constitution, keeping in mind this case was decided following remand after the Supreme Court's decision in Milkovich, the whole point was to decide whether New York law applied more broadly and consider the context of statements more broadly than federal law. The court said, given that this was a letter to the editor, given that it was penned by someone who had a stake in the controversy and who laid that stake on the table, a reasonable reader of the journal would understand it as a statement of opinion. And in this case, there is, if anything, more of this sort of context given to readers. The blog post, for example, gave multiple paragraphs, excuse me, paragraphs of background explaining that Dr. Polis had submitted commentary detailing flaws in the 2018 study and in the 1998 study that we were just discussing. She explained that the study was retracted based on her commentary. She provided links to all of these sources. She provided a link to the BuzzFeed article covering the retraction. And then she went on to tell readers, quote, so I have more to say. She was explaining that she would be providing a follow-up blog with more thoughts around the experience. She gave signals not just about her own involvement in the controversy, but that she was providing her own take on the experience and the issues. And the others... Well, nonetheless, isn't it fair to say that she presents herself as a very well-credentialed expert and knowledgeable in the field? And she does say at one point that, she says outright, there are no scientific publications demonstrating how accurately Daisy tracks fertility. Why wouldn't a reasonable reader coming across that with her credentials and her self-presentation as an expert take that as a statement of fact that, if untrue, might be actionable? Well, yes, Your Honor. Taking those two points in turn, sort of her credentials and then the actual statement she was making on the basis of those credentials. So I think the New York cases and the sports cases are quite clear that being a well-credentialed expert can cut in one of two directions. And when you present yourself as an expert who has a stake in the controversy, it actually cuts very strongly in favor of the fact of the idea that your where it was the former attorney general who was writing the opinion piece. But the former attorney general said, I actually represent the software company at issue in this op-ed. And of course, the tone of this opinion piece was very polished. Obviously, quite serious credentials being the former attorney general. Nonetheless, that context actually signaled that readers would be expecting opinions. I think a good counterexample is the New York Court of Appeals Boeheim case, which involved Coach Boeheim at Syracuse. That was a well-credentialed person in a quite different sense, where his involvement in the events at issue and his purported observation or non-observation of sexual assault signaled to readers that he had inside information that was not disclosed. And Valley has never really suggested that that's the case here. So I ask you with respect to this following up on the same point Judge Carney made, your client has published numerous criticisms of the plaintiff. And I assume that but for this lawsuit, but for affirmance, she will continue to do so. Is that a fair assumption on my part? Well, Your Honor, I don't know about going forward in the future, but certainly she has posted criticisms of this company. Well, to the extent that you're arguing that these are just her opinions, I don't assume she's prepared to say that the studies are flawed, their conduct is unethical, but this is just my opinion. I mean, the impression she wants to give is that this is she's not trying to suggest this is just her opinion. Well, Your Honor, I think it's important to distinguish between whether she's trying to give the impression that the specific challenge defamatory statements are her opinion, as opposed to the supporting statements that she provides, which I can see. Right. Let's stick with the statements the counsel has identified here in oral argument, that the studies are flawed, that they know they're flawed. We also talked about the accusation that they were engaged in unethical conduct. I mean, your client's not looking to give the impression that that's just an opinion. She's saying, I'm a doctor, this is my area of expertise, and they're unethical. I think that my client is looking to make sure people understand these are serious assertions backed up by serious evidence. What does she mean when she charges them with being unethical? What does she mean by that? So to take, I think it's helpful to take these statements specifically in their context. And so one of them that you just referenced was about existing, the full sentence is, existing slash potential customers should be aware of how unethical this company is. And what does she mean when she says that they should be aware of how unethical they are? What is it that they're unethical about? Well, I think what's helpful here, Your Honor, is that she explains in those accompanying bullet points, she says she's taking a position on how people should understand how Valley has reacted to the retraction of its study. And she's providing examples of what the company did in response to its understanding that the study was going to be retracted. In her view, customers should be aware of how unethical the company is. And the point of using those examples at the beginning of my argument from Immuno, I think it sort of ties in here, which is that statements that sound to have objective weight to them and seriousness, under New York law, that does not mean that the statements are actionable. You have to take into account what a reader coming to this publication with an understanding of the controversy, the background leading up to it, and the author's position in that controversy. And so the sort of parsing of adjectives, verbs, nouns, and whether those add because this has been an emphasis of Valley's briefing as well. This is a question that courts routinely decide at the motion to dismiss stage. This court has affirmed multiple decisions dismissing at the 12B6 stage on opinion versus fact questions. Immuno itself, much as Valley makes this an emphasis of its reply brief, the decision in Immuno was at the summary judgment stage, but all of the court's state law analysis depended on statements made in the journal. This did not, none of the material produced during discovery had any bearing on the decision, and you can see that from the court's decision. The portion of the opinion that Valley cites in its reply brief is the federal law analysis under Milkovich. It's not the state law analysis. Counsel, let me interject for a minute if I may. I understand Valley to be arguing that it is not a limited public figure, although it markets this device, and that there is no controversy, that any controversy there is is purely of your client's own making, that she sought the retraction from a single individual at this journal, and it's her own flapping around on the web and in BuzzFeed and other publications that has given her the cover of a controversy and allowed her to assert that a relatively high standard apply here, but that really we should be more relaxed that they are a private entity that is undertaking its business in good faith, and that there is no controversy, and this is too stringent. What's your view about that? Your Honor, several responses. The day the article was retracted, BuzzFeed News, which is a major internet news source, I think Pulitzer Prize winning recently, published a news article about the retraction quoting Valley's medical director, quoting Dr. Polis, quoting several other experts about this. The FDA has repeatedly investigated Valley and told them to stop marketing their thermometer as a contraceptive, and that is described in the news story about it. Valley responded to the retraction of the study on its website, calling this a controversy, mind you. I can point that out in the record. This is in the appendix, where Valley puts up something on its website describing the retraction, and I just think to say that this isn't a public controversy, whether it's in the context of limited public figure or under the anti-slap law that we were previously discussing, I just think it's quite clear from the face of the complaint and the documents that were properly judicially noticed. All right. Thank you. Thank you, Your Honors. Mr. Ross. Just a couple of points. One is limited public figure. We don't meet really any of the limitations of being a limited public figure. We don't in particular act as the primary spokesman for any position in a public controversy. We don't think there is a public controversy. We don't have continuous contacts with the media. The immuno case we address on page four, and we point to the language which holds, and I quote, we did not and do not hold that the assertions of verifiable fact in the allegedly defamatory letter were overridden or trumped by their immediate or broader context, and therefore automatically and categorically protected as opinion. And as referenced just a moment or two ago, these statements imply facts, and they are assertions of fact. Social media, quote, there are no scientific publications demonstrating how accurately DAISY does this, close quote, meaning predict the fertile days. And BuzzFeed, quote, for polis and other critics, DAISY is just one of the many fertility products flooding the market without solid evidence, stand on, close quote. We allege that we have that evidence. We have scientific studies. Those studies have not been depublished, not been retracted, and we should get by the motion to dismiss. Thank you. Thanks very much. We'll reserve decision and we are